IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| J. BRONSON, G. LEE COOK and D. COOK,<br><br>Plaintiffs,<br><br>vs.<br><br>SHERRIE SWENSEN, Salt Lake County Clerk,<br><br>Defendant. | ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:04-CV-21 TS |

Before the Court are Plaintiffs' Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment. The opposing motions address the same issue: the constitutionality of Utah Code Ann. §76-7-101, Utah Constitution, Article III, §1, and the Utah Enabling Act.[1] These statutes prohibit the religious practice of polygamy by outlawing bigamy or "polygamous or plural marriages."

Plaintiffs Cook are husband and wife. Plaintiff G. Lee Cook seeks a marriage license to marry Plaintiff J. Bronson. Plaintiff D. Cook consents to such marriage.

---

[1] Utah Enabling Act, ch. 138, §3, 28 Stat. 107, 108 (1894).



Defendant refuses to issue a marriage license for the marriage of G. Lee Cook and J. Bronson, citing Utah law.

Plaintiffs assert that plural marriage is a deeply held religious belief and that Defendant's refusal to permit a legal marriage deprives them of their constitutional rights to free exercise of their religious beliefs, right of association and their right to privacy, as protected by the First, Fourteenth, and other Amendments to the Constitution of the United States.

## UNDISPUTED FACTS

The facts in this case are not disputed. Plaintiffs assert that it is their sincere and deeply held religious belief that the doctrine of plural marriage -- that is, that a man have more than one wife -- is a belief that is ordained of God and is to be practiced and encouraged. Plaintiffs characterize their belief to be similar to the practice of polygamy by the Church of Jesus Christ of Latter-Day Saints (Mormons) prior to 1890.

In order to practice their religious belief, Plaintiffs sought a license to permit G. Lee Cook and J. Bronson to marry. On December 22, 2003, Plaintiffs sought a marriage license by filling out the required application and tendering the license fee. When G. Lee Cook revealed to Defendant that he was already married, both by indicating such on the application and then orally, and that he sought to marry a second wife, Defendant refused to issue the marriage license.

## CHALLENGED STATUTES

Utah Code Ann. § 76-7-101 prohibits polygamy in Utah by outlawing bigamy:

> (1) A person is guilty of bigamy when, knowing he has a husband or wife or knowing the other person has a husband or wife, the person purports to marry another person or cohabits with another person.

*Id.* Polygamy is also prohibited by the Utah Constitution, Article III, §1:

> Perfect toleration of religious sentiment is guaranteed. No inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship; but polygamous or plural marriages are forever prohibited.

*Id.*

This language of the Constitution is required by the Enabling Act[2] which permitted Utah to join the Union, but with certain conditions, including a proscription of polygamy. This language provides, "That polygamous or plural marriages are forever prohibited."

Plaintiffs' Complaint challenges the constitutionality of these provisions of federal and state law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). In this case, as previously noted, there are no issues of fact in dispute.

## STANDING

At the outset, Defendant asserts that Plaintiffs lack standing to challenge the constitutionality of the statutory and constitutional provisions at issue. Defendant relies on the three "irreducible" minimum requirements for standing required by the Constitution as set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

---

[2]Utah Enabling Act, Ch. 138, §3.

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly..trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 504.

Defendant asserts that Plaintiffs fail to meet all three requirements. Defendant focuses primarily on the first requirement, arguing that Plaintiffs' injuries are speculative because they have not been charged under the criminal statute cited above, nor have they been threatened with prosecution under that statute.

Plaintiffs do not assert that they have been prosecuted, nor that they face imminent prosecution, for their private sexual conduct. This court does not construe such to be the issue before it. What Plaintiffs do assert is that they hold sincere and deeply held religious beliefs that the doctrine of plural marriage, *i.e.*, that a man should have more than one wife, is a doctrine that is ordained of God and is to be practiced and encouraged. The Complaint asserts that Plaintiffs were denied a marriage license, the document necessary to make their marriage legal, because of the statutes and constitutional provisions in question. It is not contested that Defendant refused to issue a license for the polygamous marriage in reliance on the statutes and constitutional provisions in question. Plaintiffs have thus shown the necessary injury - an injury that is concrete and particularized and is, in fact, actual and imminent.

Second, Plaintiffs have shown that there is a causal connection between the injury and the conduct complained of, the injury (denial of the legal right to practice polygamy) being clearly traceable to the Defendant's action of relying on the statutes and provisions in question in denying Plaintiffs a marriage license.

Plaintiffs have also shown that the injury they claim would be redressed by a favorable opinion. If this court were to find that the statutes and provisions at issue were unconstitutional under current Supreme Court rulings, Plaintiffs would be entitled to a marriage license and their injury would be redressed.

The Court therefore finds that Plaintiffs have standing to bring this action.

## CONSTITUTIONALITY

The question of the constitutionality of Utah's laws prohibiting the practice of polygamy is not a new question before the courts. This court will not attempt to give the history of all the cases that have addressed that very issue, but will confine itself to a brief discussion of the recent, relevant cases addressing the question.

In the case *Potter v. Murray City*, 760 F.2d 1065 (10th Cir. 1985), the court affirmed a district court decision rejecting a claim that the laws in question were in violation of Plaintiff's right to free exercise of religion as follows:

> We are in agreement with the district court that the State of Utah
> beyond the declaration of policy and public interest implicit in the prohibition
> of polygamy under criminal sanction, has established a vast and convoluted
> network of other laws clearly establishing its compelling state interest in and
> commitment to a system of domestic relations based exclusively upon the
> practice of monogamy as opposed to plural marriage.
> Monogamy is inextricably woven into the fabric of our society. It is the
> bedrock upon which our culture is built. *Cf. Zablocki v. Redhail*, 434 U.S.
> 374, 384 (1978)(marriage is foundation of family and society; "a bilateral

loyalty"). In light of these fundamental values, the State is justified, by a compelling interest, in upholding and enforcing its ban on plural marriage to protect the monogamous marriage relationship.

*Id.* at 1070 (quoting *Potter v. Murray City*, 585 F. Supp. 1126, 1138 (D. Utah 1984)).

Thus, the law in the Tenth Circuit is that the State of Utah has a compelling state interest in banning plural marriage.

Instructive for purposes of this order is the fact that the court in *Potter* analyzed the continuing validity of *Reynolds v. United States*, 98 U.S. 145 (1878), in which the Supreme Court upheld the criminal conviction of a Mormon for practicing polygamy, and rejected the argument that a prohibition on polygamy violated the right to the free exercise of religion. The *Potter* court relied on the fact that *Reynolds* continued to be cited with approval by the Supreme Court in subsequent decisions, including cases cited by the defendant in *Potter* for the proposition that *Reynolds* was no longer controlling, as clear evidence that it was still the law of the land. *Id.* at 1069.

The Plaintiff in *Potter* also raised the right to privacy:

Plaintiff argues that his constitutional right to privacy prohibits the State of Utah from sanctioning him for entering into a polygamous marriage. Again we disagree. We find no authority for extending the constitutional right of privacy so far that it would protect polygamous marriages. We decline to do so.

*Potter*, 760 F.2d at 1070-1071.

As recently as 2002, the Tenth Circuit rejected a challenge to the constitutionality of Utah's prohibition against polygamy. In the unpublished decision in *White v. Utah*, 41 Fed. Appx. 325 (10th Cir. 2002), the Circuit rejected a plaintiff's constitutional challenge to

the prosecution of another individual for practicing polygamy, citing *Reynolds* and *Potter*. *Id.* at 326.

In *State v. Green*, 99 P.3d 820 (2004), the Utah Supreme Court noted the continuing validity of *Reynolds*, and further held that even if it were "to extend its reasoning beyond *Reynolds*, Utah's bigamy statute would survive a federal free exercise of religion challenge under the most recent standards enunciated by the United States Supreme Court." *Id.* at 20.

Plaintiffs seem to face an insurmountable hurdle. Not only does it appear that *Reynolds* is still the law of the land on the issue of polygamy and the free exercise of religion, but in this Circuit it has been held that the State of Utah has a compelling state interest in protecting monogamous marriage.

The only question, therefore, is whether more recent rulings by the Supreme Court have undermined *Reynolds* or the above-cited Tenth Circuit cases as controlling authority.

Plaintiffs cite several recent Supreme Court decisions. However, the Court finds none of them to be helpful to Plaintiffs' position. Plaintiffs rely on *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), in which the Supreme Court considered the constitutionality of an Oregon prohibition of the use of peyote, including its usage for religious or sacramental purposes. In finding such a prohibition was not an unconstitutional infringement on the free exercise clause of the First Amendment, the Court cited the *Reynolds* case as authority for its holding. *Id.* at 1596.

Another example is the 1993 decision of *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993). The Supreme Court held that city ordinances that

burdened a religious practice need not be justified by a compelling state interest if the ordinance is neutral and of general applicability. If not neutral or of general applicability, the government must show both a compelling governmental interest and that the laws were narrowly tailored to advance that interest. In its opinion, the Supreme Court cited *Reynolds* as an example of the following proposition: "To be sure, adverse impact will not always lead to a finding of impermissible targeting. For example, a social harm may have been a legitimate concern of government for reasons quite apart from discrimination." *Id.* at 535. Clearly, *Reynolds* retained its vitality as recently as 1993.

Even if this court were to ignore such fact, and were to find that either *Smith* or *Lukumi*, or both, could be construed to allow this court to find that the Utah laws prohibiting polygamy were to be subject to a strict scrutiny, Tenth Circuit precedent in *Potter* dictates the finding that there is a compelling state interest in the protection of monogamous marriage. Plaintiffs have not made a convincing argument that the statutes and constitutional provisions in question are not narrowly tailored to meet that compelling state interest.

Plaintiffs also cite the recent decision of the Supreme Court of *Lawrence v. Texas*, 539 U.S. 558 (2003). In *Lawrence*, the Supreme Court ruled that the State of Texas could not criminalize the petitioner's private sexual conduct of sodomy. The Court held that such conduct was a protected liberty interest and that the State of Texas had failed to establish a rational basis for criminalizing such conduct. Plaintiffs herein assert that *Lawrence* is to be read to require the state to sanction their polygamous marriage.

It is important to note what the Court in *Lawrence* did and did not do. As the majority opinion states, "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve **public conduct** . . .. It does **not involve whether the government must give formal recognition to any relationship** that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." *Id.* at 578.

Giving the required deference to the Supreme Court's own stated limitations of its *Lawrence* holding, this court cannot hold that *Lawrence* can be read to require the State of Utah to give formal recognition to a public relationship of a polygamous marriage. Contrary to Plaintiffs' assertion, the laws in question here do not preclude their private sexual conduct. They do preclude the State of Utah from recognizing the marriage of Plaintiff G. Lee Cook to Plaintiff J. Bronson as a valid marriage under the laws of the State of Utah.

Plaintiffs refer to the dissent of Justice Scalia in *Lawrence*, where he contends that the majority's ruling will call into question state laws against bigamy, among other statutes that are based upon moral choices. *Id.* at 590. That is likely to be true. But the Tenth Circuit and Supreme Court precedents cited above remain controlling law for this Court. It is therefore

ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED. It is further

ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

DATED this __15th__ day of February, 2005.

        BY THE COURT:

        _____
        TED STEWART
        United States District Judge

```
                                                              jmr
              United States District Court
                        for the
                   District of Utah
                  February 16, 2005


         * * CERTIFICATE OF SERVICE OF CLERK * *


Re:   2:04-cv-00021



True and correct copies of the attached were either mailed, faxed or e-mailed
by the clerk to the following:


      Brian M. Barnard, Esq.
      UTAH LEGAL CLINIC
      214 E 500 S
      SALT LAKE CITY, UT  84111-3204
      EMAIL

      Mr. Jerrold S. Jensen, Esq.
      UTAH ATTORNEY GENERAL'S OFFICE
      160 E 300 S FIFTH FL
      PO BOX 140874
      SALT LAKE CITY, UT  84114-0874
      EMAIL

      Andrew G Deiss, Esq.
      JONES WALDO HOLBROOK & MCDONOUGH
      170 S MAIN ST STE 1500
      PO BOX 45444
      SALT LAKE CITY, UT  84145-0444
      EMAIL

      Marci A. Hamilton, Esq.
      36 TIMBER KNOLL DR
      WASHINGTON CROSSING, PA  18977
```