**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

FILED
U.S. DISTRICT COURT

2007 SEP 24  D 3: 41

DISTRICT OF UTAH

BY: _____
          Douglas E. Cressler
          Chief Deputy Clerk

Elisabeth A. Shumaker
Clerk of Court

September 20, 2007

D. Mark Jones
United States District Court for the District of Utah
Office of the Clerk
350 South Main Street
150 Frank E. Moss U.S. Courthouse
Salt Lake City, UT 84101-0000

**RE:**     **05-4161, Bronson, et al v. Swensen**
               Dist/Ag docket: [2:04-CV-21-TS]

Dear Clerk:

Enclosed are a certified copy of the judgment and a copy of the opinion filed in this case
which are issued as the mandate of this court. *See* Fed. R. App. P. 41(a). Please file it in
records of your court or agency.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker

Elisabeth A. Shumaker
Clerk of the Court

Enclosure(s)

cc:     Brian M. Barnard
          Jerrold S. Jensen
          Nancy L. Kemp
          Julie V. Lund

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

J. BRONSON; G. LEE COOK; D. COOK,

        Plaintiffs - Appellants,

v.

SHERRIE SWENSEN, Salt Lake County Clerk,

        Defendant - Appellee.

No. 05-4161
(D.C. No. 2:04-CV-00021-TS)

A true copy
Teste

Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit

By _____
Deputy Clerk

**JUDGMENT**

Filed August 29, 2007

---

Before **TACHA**, Chief Circuit Judge, **HARTZ** and **HOLMES**, Circuit Judges.

---

This case originated in the District of Utah and was submitted on the briefs at the direction of the court.

The judgment of that court is vacated. The case is remanded to the United States District Court for the District of Utah for further proceedings in accordance with the opinion of this court.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by: _____
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

<u>PUBLISH</u>

**August 29, 2007**

## UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

## TENTH CIRCUIT

---

J. BRONSON, G. LEE COOK, and D.
COOK,

       Plaintiffs-Appellants,

v.

SHERRIE SWENSEN,
Salt Lake County Clerk,

       Defendant-Appellee.

No. 05-4161

---

**Appeal from the United States District Court
for the District of Utah
(No. 04-CV-00021-TS)**

---

Submitted on the briefs:

Brian M. Barnard, Utah Legal Clinic, Salt Lake City, UT, for Plaintiffs-
Appellants

Mark Shurtleff, Utah Attorney General (Nancy L. Kemp, Assistant Utah Attorney
General), Salt Lake City, UT, for Defendant-Appellee.

---

Before **TACHA**, Chief Judge, **HARTZ** and **HOLMES**, Circuit Judges.[*]

---

    [*]    After examining the briefs and appellate record, this panel has
determined unanimously to honor the appellants' request for a decision on the
briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore
submitted without oral argument.

**HOLMES**, Circuit Judge.

Plaintiffs-Appellants J. Bronson, G. Cook, and D. Cook ("plaintiffs") subscribe to the religious doctrine of polygamy.  G. Cook is married to D. Cook. G. Cook and J. Bronson filed an application for a marriage license, and Defendant-Appellee Sherrie Swensen ("Swensen"), the Clerk for Salt Lake County, Utah, refused to issue the marriage license.  Plaintiffs subsequently brought a civil rights action under 42 U.S.C. § 1983, alleging that Swensen's refusal to issue the marriage license violated their associational, substantive due process, and free exercise rights under the First and Fourteenth Amendments to the United States Constitution.

The district court held that plaintiffs possessed standing to challenge the constitutionality of Utah's civil *and* criminal prohibitions against the practice of polygamy, as reflected in Utah Code Ann. § 76-7-101, § 3 of the Utah Enabling Act, and § 1 of Article III of the Utah Constitution.  Reaching the merits of plaintiffs' claims, the district court applied controlling Supreme Court and Tenth Circuit precedent and found the absence of a constitutional violation. Consequently, the district court granted summary judgment to Swensen on all of plaintiffs' claims.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  After concluding

-2-

that plaintiffs have forfeited any challenge to the constitutionality of Utah's civil prohibition of polygamous marriages, we hold that plaintiffs lack standing to bring claims against Swensen based upon the purported unconstitutionality of Utah's criminal prohibition of polygamy. We therefore **VACATE** the district court's judgment in favor of Swensen on the merits of these criminal-prohibition claims and **REMAND** the case for entry of an order dismissing these claims for lack of subject matter jurisdiction.

## I.   BACKGROUND

### A.   Legislative Background

In 1894, Congress passed the Utah Enabling Act, which demanded as a condition of statehood that Utah enact an "irrevocable" ordinance preserving the security of religious beliefs, but forever prohibiting "polygamous or plural marriages." *See* Act of July 16, 1894, ch. 138, § 3, 28 Stat. 107, 108 ("That perfect toleration of religious sentiment shall be secured, and that no inhabitant of said State shall ever be molested in person or property on account of his or her mode of religious worship: *Provided*, That polygamous or plural marriages are forever prohibited." (emphasis in original)). Utah complied with this requirement, and, in 1895, a nearly identical version of this proscription was included in Article III of Utah's Constitution:

> The following ordinance shall be irrevocable without the consent of the United States and the people of this State:

> First:–Perfect toleration of religious sentiment is guaranteed. No inhabitant of this State shall ever be molested in person or property on account of his or her mode of religious worship; but polygamous or plural marriages are forever prohibited.

Utah Const. art. III, § 1.

The constitutional prohibition of "polygamous or plural marriages" has

spawned civil and criminal legislation. *See State v. Holm*, 137 P.3d 726, 738-40

(Utah 2006), *cert. denied*, 127 S.Ct. 1371 (2007). On the criminal side, Utah

enacted an anti-bigamy statute,[1] which reads as follows:

> (1) A person is guilty of bigamy when, knowing he has a husband or wife or knowing the other person has a husband or wife, the person purports to marry another person or cohabits with another person.
>
> (2) Bigamy is a felony of the third degree.
>
> (3) It shall be a defense to bigamy that the accused reasonably believed he and the other person were legally eligible to remarry.

Utah Code Ann. § 76-7-101.[2]

The Supreme Court of Utah has interpreted the term "marry" in § 76-7-101

as relating to both "legally recognized marriages and those that are non state-

---

[1]    Although this opinion uses the terms interchangeably, a conceptual difference exists between "bigamy" and "polygamy." "Bigamy" is defined as "the act of marrying one person while legally married to another." *See Black's Law Dictionary* 172 (8th ed. 2004). "Polygamy," on the other hand, includes and exceeds the scope of bigamous behavior; it is defined as "the state or practice of having more than one spouse simultaneously." *Id.* at 1197.

[2]    Utah enacted a child bigamy statute in 2003. *See* Utah Code Ann. § 76-7-101.5. Under this statute, it is a second degree felony for a person, knowing he or she has a wife or husband, to marry or to cohabit with a person under the age of eighteen. *Id.*

-4-

sanctioned." *Holm*, 137 P.3d at 734. It also has interpreted the word "cohabit" in § 76-7-101 in its colloquial sense, as meaning "to dwell together as, or as if, husband or wife" or to "live together in a sexual relationship, especially when not legally married." *State v. Green*, 99 P.3d 820, 832 (Utah 2004) (internal quotation marks omitted) (quoting *The American Heritage Dictionary of the English Language* (4th ed. 2000), and *Webster's New Dictionary, Concise Edition* (1990)).

With respect to civil legislation, § 30-1-2 of the Utah Code declares "void" and "prohibited" any marriage involving a person with a "husband or wife living, from whom the person marrying has not been divorced." Utah Code Ann. § 30-1-2. A county clerk is barred from issuing a marriage license for a "prohibited" marriage. *Id.* § 30-1-16. In fact, Utah makes it a crime for a clerk or deputy clerk to "knowingly issue a license for any prohibited marriage." *Id.* § 30-1-16. An offender is subject to "confinement in the state prison for a term not exceeding two years" and/or to a "fine in any sum not exceeding $1,000." *Id.* No marriage may be solemnized without a license issued by the county clerk. *Id.* § 30-1-7.

### B.     Factual Background

Plaintiffs subscribe to the religious doctrine of plural marriages, which they define as a "man having more than one wife," similar to that practiced by the Church of Jesus Christ of Latter-Day Saints in Utah prior to 1890. App. at 19, 33,

46-47.[3]

Plaintiffs, G. Cook and J. Bronson, applied for a marriage license and paid the $50.00 filing fee to a deputy clerk at the Marriage Division of the Salt Lake County Clerk's Office in Salt Lake City, Utah. The application indicated that G. Cook was already married to D. Cook. In addition, G. Cook orally informed two deputy clerks that he desired to legally marry a second wife and that D. Cook consented to this marriage. Swensen, the elected Clerk of Salt Lake County, instructed the two deputy clerks to deny the application and to inform plaintiffs that plural marriage in Utah is illegal. The Clerk's Office refunded the $50.00 filing fee.

## C.    Procedural Background

Plaintiffs filed suit under 42 U.S.C. § 1983 against Swensen and the two deputy clerks, alleging that they violated plaintiffs' federal constitutional rights, including their rights to the free exercise of religion, to intimate expression and association, and to privacy. Plaintiffs sought nominal damages, a declaratory judgment, and injunctive relief.

Subsequently, the parties agreed to seek the dismissal of the two deputy

---

[3]      On October 6, 1890, the Church of Jesus Christ of Latter Day Saints officially abolished polygamy as an institutional church practice. *See Oliverson v. West Valley City*, 875 F. Supp. 1465, 1476 n.20 (D. Utah 1995).

clerks. They also stipulated that Swensen acted under color of state law in denying the application. Plaintiffs moved for summary judgment. And, in response, Swensen filed a cross-motion for summary judgment.

After officially dismissing the deputy clerks from the action, the district court entered summary judgment in favor of Swensen. The district court determined that plaintiffs had standing to challenge the constitutionality of § 1 of Article III of the Utah Constitution, § 3 of the Utah Enabling Act, and § 76-7-101. The district court then applied controlling Supreme Court precedent, *Reynolds v. United States*, 98 U.S. 145 (1878), and controlling Tenth Circuit precedent, *Potter v. Murray City,* 760 F.2d 1065 (10th Cir. 1985), to uphold the constitutionality of the contested provisions. The district court reasoned that Supreme Court jurisprudence post-dating *Reynolds* and *Potter*, including *Lawrence v. Texas*, 539 U.S. 558 (2003), did not suggest a different outcome.

Plaintiffs filed a motion asking the district court to reconsider its decision. The district court denied that motion. And plaintiffs filed a timely notice of appeal.

## II.   DISCUSSION

Plaintiffs appeal the district court's grant of summary judgment to Swensen on their § 1983 claims, arguing that the district court erred in failing to find the existence of a constitutional violation. We hold that plaintiffs have forfeited their claims contesting the constitutionality of Utah's civil prohibition of polygamy.

-7-

We further hold that plaintiffs lack standing to pursue their claims against

Swensen based upon the alleged unconstitutionality of Utah's criminal prohibition

of polygamy.

### A.    Scope of the Appeal

An appellant's opening brief must identify "appellant's contentions and the

reasons for them, with citations to the authorities and parts of the record on which

the appellant relies." Fed. R. App. P. 28(a)(9)(a). Consistent with this

requirement, we routinely have declined to consider arguments that are not raised,

or are inadequately presented, in an appellant's opening brief. *See Exum v.*

*United States Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004)

("Scattered statements in the appellant's brief are not enough to preserve an issue

for appeal."); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995)

(refusing to consider challenge to grant of summary judgment covering Title VII

retaliation claim because, although appellant maintained at oral argument that she

was asserting a retaliation claim, this issue was not adequately briefed). Stated

differently, the omission of an issue in an opening brief generally forfeits

appellate consideration of that issue. *See Wyoming v. Livingston*, 443 F.3d 1211,

1216 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 553 (2006); *Anderson v. U.S. Dep't*

*of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005).

We conclude that plaintiffs' opening brief *does not* adequately raise and

pursue an argument as to the unconstitutionality of Utah's civil prohibition of

-8-

polygamous marriages. For instance, plaintiffs' statement of issues on appeal, while referencing § 3 of the Utah Enabling Act and § 1 of Article III of the Utah Constitution, does not expressly seek to invalidate Utah's civil statutes prohibiting polygamous marriages. *See Anderson*, 422 F.3d at 1174 (issue not raised in statement of issues in initial brief is waived on appeal). Instead, it refers to the Enabling Act and Article III in connection with plaintiffs' attack on the constitutionality of Utah's criminal bigamy statute, § 76-7-101.[4]

Furthermore, plaintiffs' opening brief does not attempt to explain why Utah's refusal to give civil recognition to polygamous marriages should be held to contravene their constitutional rights. Instead, plaintiffs' opening brief is dedicated entirely to establishing the invalidity of Utah's criminal prohibition of polygamy – that is, to "seek[ing] an end to the *criminalization* of the practice of religious polygamy," regardless of whether "no legal marital rights are afforded to a second or third spouse."[5] Aplt. Br. at 10 (emphasis added). Plaintiffs do

---

[4]    In mounting their attack on Utah's criminal prohibition of polygamy, plaintiffs purport to seek the invalidation of § 3 of the Utah Enabling Act and § 1 of Article III of the Utah Constitution. Standing alone, however, these provisions do not establish a criminal regulatory regime. By their terms, they do not establish crimes nor do they impose criminal penalties. Rather, they have provided the foundation for both civil *and* criminal legislative enactments that prohibit polygamy. Plaintiffs' singular attack on Utah's criminal prohibition of polygamy is therefore properly viewed as an effort to invalidate on constitutional grounds Utah's criminal statute that bars polygamy among consenting adults – that is, § 76-7-101.

[5]    Plaintiffs' "Summary of Argument" refers only to the absence of a
(continued...)

state in two places that they also challenge the validity of Swensen's refusal to grant a marriage license, based upon the unconstitutionality of Utah's civil prohibition of polygamy. *See id.* at 16, 40 n.21. But these cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."); *Gross*, 53 F.3d at 1547 (holding that plaintiff who "ha[d] not adequately briefed th[e] issue" of retaliation in employment discrimination action forfeited it; plaintiff's "brief contain[ed] one paragraph in which she refers to retaliation" but "did not submit any argument, cite relevant case law, or alert us to any part of the record that demonstrates retaliatory conduct").

In essence, plaintiffs' opening brief simply attempts to use Swensen's denial of a marriage license as a vehicle to challenge the constitutionality of Utah's criminal prohibition of polygamy. We therefore conclude that plaintiffs have forfeited any argument that Utah's refusal to give civil recognition to

---

[5](...continued)
legally-adequate justification for "criminalizing polygamy." Aplt. Br. at 11. Each topic heading argues solely for the invalidation of Utah's criminal prohibition of polygamy, specifically referring in most instances to § 76-7-101, which plaintiffs describe as Utah's "anti-bigamy law" or "anti-polygamy law." And most significantly, the content of plaintiffs' argument section exclusively analyzes the unconstitutionality of § 76-7-101.

-10-

polygamous marriages is unconstitutional.[6]

## B.    Constitutionality of Utah's Criminal Prohibition of Polygamy

Plaintiffs' substantive challenge to Utah's criminal prohibition of polygamy

faces a litany of seemingly insurmountable precedential obstacles. Case law

upholding the criminalization of polygamy from constitutional attack dates back

at least to 1878, when in *Reynolds v. United States*, 98 U.S. 145, 162-66 (1878),

the Supreme Court rejected a free exercise challenge to the Morrill Anti-Bigamy

Act of 1862. More contemporary decisions from the Supreme Court and from this

Court have acknowledged the continued validity of *Reynolds*. *See Lukumi Babalu

Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (citing *Reynolds* as support

for the proposition that adverse impact on religion from operation of legislative

enactment does not translate into impermissible religious targeting where "a

social harm may have been a legitimate concern of government for reasons quite

apart from discrimination"); *Grace United Methodist Church v. City of Cheyenne*,

451 F.3d 643, 649 (10th Cir. 2006) (citing *Reynolds* with approval).

Similarly, constitutional challenges to Utah's criminal statute outlawing

---

[6]    In their reply brief, plaintiffs protest the idea that they have forfeited
any argument concerning the alleged unconstitutionality of Utah's civil
proscriptions regarding polygamy. However, plaintiffs do not identify where in
their opening brief they mounted a challenge to these provisions. Indeed,
plaintiffs' reply brief underscores the exclusive criminal-law focus of their
appellate challenge, stating: "This action seeks a judicial determination as to the
unconstitutionality of provisions of Utah law and federal law that *make criminal*
the religious practice of polygamy." Aplt. Reply Br. at 1 (emphasis added).

-11-

polygamy, Utah Code § 76-7-101, have failed. In *Potter*, this Court relied upon *Reynolds* in rejecting attacks that were premised upon the Due Process and Free Exercise Clauses of the United States Constitution. *See Potter*, 760 F.2d at 1068-69. And the Utah Supreme Court recently invoked *Reynolds* and *Potter* in holding that a defendant's conviction under § 76-7-101 did not violate his rights to association, to the free exercise of religion, and to substantive due process, as guaranteed by the First and Fourteenth Amendments to the federal Constitution. *Holm*, 137 P.3d at 741-49; *see also Green*, 99 P3d at 825-30 (applying *Reynolds* and *Potter* to reject federal free exercise challenge to § 76-7-101).

Despite this wealth of controlling and persuasive precedent, we conclude that the district court lacked subject matter jurisdiction to resolve plaintiffs' claims against Swensen based upon Utah's criminal prohibition of polygamy. We hold that these claims – the only claims at issue in this appeal – fail to present a justiciable "case" or "controversy" within the meaning of Article III of the United States Constitution.

### 1.   Standard For Constitutional Standing

This Court reviews *de novo* a district court's decision as to standing. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1109 (10th Cir. 2006). Article III of the United States Constitution restricts the jurisdiction of federal courts to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. To establish a case or controversy, a plaintiff bears the burden of demonstrating:

-12-

> (1) it has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged action
> of the defendant; and (3) it is likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81

(2000); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Tandy v.*

*City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004). Put simply, a plaintiff

must establish three elements: an injury-in-fact, causation, and redressability.

*See Finstuen v. Crutcher*, Nos. 06-6213 & 06-6216, ___ F.3d___, 2007 WL

2218887, at *2 (10th Cir. Aug. 3, 2007) (noting that "Article III standing . . .

requires that a plaintiff establish injury-in-fact, causation, and redressability").

Each plaintiff must have standing to seek each form of relief in each claim.

*See DaimlerChrysler Corp v. Cuno*, 126 S.Ct. 1854, 1867 (2006); *Friends of the*

*Earth, Inc.*, 528 U.S. at 185. Standing at the summary judgment stage "must be

supported by specific evidentiary facts and not by mere allegations." *Phelps v.*

*Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (citing *Lujan*, 504 U.S. at 562);

*see Tandy*, 380 F.3d at 1284.

## 2.    District Court's Analysis

Without distinguishing between Utah's criminal prohibition of polygamy

and its civil prohibition of polygamy, the district court concluded that plaintiffs

had standing. Its analysis was predicated upon three points: (1) that plaintiffs'

injury was not the threat of imminent prosecution, but, instead, the "denial of the

-13-

legal right to practice polygamy," App. at 282-83; (2) that a causal nexus existed between this injury-in-fact and Swensen's denial of a marriage license in reliance upon Utah's prohibition of polygamy; and (3) that a favorable opinion would redress plaintiffs' injury, as the contested provisions would be held unconstitutional and the marriage license would issue. For the reasons detailed below, we conclude that the district court erred with respect to the criminal-prohibition claims.

### 3. Plaintiffs' Standing to Challenge Utah's Criminal Prohibition of Polygamy

We hold that plaintiffs have failed to meet their burden of demonstrating constitutional standing to seek prospective or retrospective relief based upon the alleged unconstitutionality of Utah's criminal prohibition of polygamy.

#### a. Prospective Relief

On appeal, plaintiffs press for prospective relief in the form of a declaratory judgment that, *inter alia*, the challenged criminal enactments – particularly, the provisions of § 76-7-101 – are unconstitutional. Plaintiffs' complaint also requests an injunction prohibiting the future enforcement of the criminal enactments. Under the facts of this case, both forms of prospective relief trigger the same standing analysis. *See Tandy*, 380 F.3d at 1284-89. Furthermore, we may perform this analysis collectively under the circumstances present here: each plaintiff asserts the same injury-in-fact, the "threat" of

-14-

prosecution under § 76-7-101, based upon a shared intent to enter into a three-way polygamous relationship.[7]

### i.    Injury-in-Fact

Plaintiffs argue on appeal that they possess standing to challenge Utah's criminal prohibition of polygamy due to their *"fear* of criminal prosecution," including the stigma of being branded as a law-breaker. Aplt. Br. at 14 (emphasis in original); *see* Aplt. Reply Br. at 2-3.  A plaintiff challenging the "validity of a criminal statute under which he has not been prosecuted . . . must show a 'real and immediate threat' of his future prosecution under that statute to satisfy the injury in fact requirement." *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) (quoting *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001)).

This requirement also has been characterized as a "credible" threat of prosecution, one that arises from an "objectively justified fear of real consequences." *D.L.S.*, 374 F.3d at 975; *see Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088-89 (10th Cir. 2006) (en banc), *cert denied*, 127 S.Ct.

---

[7]    By purporting to enter into a polygamous marriage, J. Bronson and G. Cook would violate § 76-7-101. *See Holm*, 137 P.3d at 734 ("marry" in § 76-7-101 includes marriages that are not state-sanctioned).  Furthermore, D. Cook, by continuing to live with G. Cook after his second, extra-legal marriage, would fall within the literal language of the statute, which also proscribes "cohabit[ation]." Utah Code Ann. § 76-7-101.

1254 (2007); *see also Finstuen*, 2007 WL 2218887, at *3 ("In a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983)); *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) ("The mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or the credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.").

As suggested by this standard, a plaintiff need not risk actual prosecution before challenging an allegedly unconstitutional criminal statute. *See, e.g., Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (noting that a plaintiff "may have standing even if they have never been prosecuted"). Standing may still exist even when a plaintiff ends the proscribed behavior, so long as a credible threat remains that such behavior, if taken in the future, would be prosecuted. *See, e.g., Medimmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 772-76 (2007).

The "credible threat" test begs further inquiry into what constitutes the requisite degree of likelihood of enforcement to confer standing to bring a particular claim. *See Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005). To the extent "clarity prevails only at the poles," *id.*, case law illuminates those pre-enforcement claims for prospective relief that occupy the ends of the injury-in-fact continuum.

-16-

At the "credible threat" pole lies pre-enforcement claims brought after the entity responsible for enforcing the challenged statute actually threatens a particular plaintiff with arrest or even prosecution. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (Vietnam War protester has standing to bring claim for declaratory relief attacking constitutionality of Georgia criminal trespass law after being warned to stop handbilling and being threatened with arrest and prosecution, and after companion was arrested and arraigned); *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (adult bookstore faces credible threat of prosecution under city ordinance requiring licensing of "sexually oriented businesses" when city sends letter stating that bookstore must complete application for license or "appropriate legal action will be commenced").

These claims can be juxtaposed with those situated at the "no credible threat" end of the spectrum. There, the affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute prevents a "threat" of prosecution from maturing into a "credible" one, even when the plaintiff previously has been arrested under the statute. *See Mink v. Suthers*, 482 F.3d 1244, 1253-55 (10th Cir. 2007) (no credible threat of prosecution when district attorney authored "no file" letter disavowing intent to prosecute under challenged criminal-libel statute, even though "no file" letter "conceivably might not bind other district attorneys"); *Winsness*, 433 F.3d at 732, 735-36 (no standing

-17-

to bring § 1983 claim for injunctive and declaratory relief when plaintiffs received sworn assurances from county prosecutors that flag abuse statute would not be enforced against them or anyone else, despite fact that one plaintiff experienced a "brief prosecution" under the statute); *PeTA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (no standing to assert claims for prospective relief when defendants admitted that they threatened plaintiff's members with arrest due to misinterpretation of challenged statute and plaintiff failed to indicate intention to stage protests at statutorily-covered institutions); *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001) (no standing to assert claim for injunctive relief against future prosecution under anti-posting ordinance in light of city prosecutor's determination that plaintiff's conduct which led to arrest did not violate challenged ordinance).

In addition, the credibility of a "threat" is diluted when a factual dissimilarity exists between the plaintiff's intended future conduct and the conduct that triggered any prior prosecutions under the challenged statute. *See D.L.S.*, 374 F.3d at 975 (plaintiff lacks standing to bring civil rights suit challenging Utah's anti-sodomy statute because "plaintiff cannot show a real threat of prosecution in the face of assurances of non-prosecution from the government merely by pointing to a single past prosecution of *a different person for different conduct*" (emphasis added)).

Plaintiffs' § 1983 claims for prospective relief based upon Utah's criminal

-18-

prohibition of polygamy lie closer to the "no credible threat" end of the injury-in-fact continuum. Plaintiffs were never charged, prosecuted, or directly threatened with prosecution under § 76-7-101. Moreover, the alleged credibility of plaintiffs' fear is contradicted by their repeated admission that "Utah's criminal law against polygamy is not being enforced." Aplt. Br. at 48 n.30; *see id.* at 49 n.34. It is further belied by the policy statement of the Utah Attorney General's Office that it has "decided to focus law enforcement efforts on crimes within the polygamous communities that involve child abuse, domestic violence and fraud, rather than enforcing § 76-7-101 against consensual polygamous relationships involving adults."[8] Utah and Arizona Attorney Generals' Offices, *The Primer: Helping Victims of Domestic Violence and Child Abuse in Polygamous Communities* at 3 (June 2006), *available at* http://www.attygen.state.ut.us/ polygamy/The_Primer.pdf. Plaintiffs also failed to allege or demonstrate that Swensen (even if she had the power to do so) is likely to enforce Utah's criminal laws against plaintiffs in the future. *See Rasmussen*, 298 F.3d at 1203 (finding absence of injury-in-fact in part because plaintiff did not allege that "these

---

[8]     The Utah Attorney General recently made to the Utah Supreme Court a representation of prosecutorial selectivity similar to the one found in *The Primer*. *See Holm*, 137 P.3d at 775 (Durham, C. J., concurring in part and dissenting in part) ("Further, the State itself has indicated that it does not prosecute those engaged in religiously motivated polygamy under the criminal bigamy statute unless the person has entered a religious union with a girl under eighteen years old.")

defendants" would be likely to enforce challenged statute against them in the future).

Plaintiffs rely upon two recent state prosecutions under § 76-7-101 – *Green* and *Holm* – to justify the objective reasonableness of their fear. However, the defendants in these prosecutions had committed *independent* crimes in connection with forming their respective polygamous relationships. *See Holm*, 137 P.3d at 731, 744 (noting that defendant was charged and convicted of bigamy *and* unlawful sexual conduct with minor); *Green*, 99 P.3d at 830 n.14 (noting that defendant was charged and convicted not only of bigamy but also of criminal nonsupport and rape of a child). These cases therefore involved remarkably different facts than those present in this litigation, where no independent crime would attend the formation of plaintiffs' polygamous relationship: plaintiffs are all adults and profess a desire to enter into a consensual polygamous relationship. *See D.L.S.*, 374 F.3d at 975. Accordingly, we conclude that plaintiffs cannot establish the first requirement of Article III standing – injury-in-fact.

### ii.    Causation

Even if plaintiffs' fear was based upon a credible threat of prosecution, such that they are suffering a jurisdictionally-cognizable injury, they could not satisfy the second requirement of standing – causation. The principle of causation for constitutional standing requires a plaintiff's injury to be "fairly traceable to the challenged *action of the defendant*, and not the result of the independent

-20-

action of some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (internal quotation marks omitted and emphasis added) (quoting *Lujan*, 504 U.S. at 560). Although a defendant's alleged misconduct need not be the proximate cause of a plaintiff's harm, "Article III does at least require proof of a substantial likelihood that the *defendant's conduct* caused plaintiff's injury in fact." *Id.* (emphasis added).

It is well-established that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision. *See, e.g., Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) ("In a suit such as this one, where the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue."); *see also Okpalobi v. Foster*, 244 F.3d 405, 426-28 (5th Cir. 2001) (en banc) (abortion providers lack standing to sue Louisiana Governor and Attorney General for declaratory and injunctive relief based upon unconstitutionality of Louisiana state tort statute authorizing private cause of action because defendants lack authority to enforce statute); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (noting that "an officer of a state is an appropriate defendant if he has some connection with the enforcement of the act"); 13 Charles A. Wright, Arthur

-21-

R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.5, at 1072-73 (Supp. 2007) [hereinafter, 13 Federal Practice] (commenting on cases that view the identification of the proper governmental defendant as a standing issue and "at times focus[] explicitly on the causal nexus between the official's role and the claimed injury").

For instance, in *Gandy*, we held that the plaintiff, an abortion provider, lacked standing to pursue a pre-enforcement challenge for prospective relief based upon the alleged unconstitutionality of an Oklahoma statute imposing civil liability on abortion providers for performing abortions on minors without parental consent. 416 F.3d at 1156. We observed that the plaintiff failed to show the required causal connection between its injury – the loss of minor patients who refused to obtain parental consent – and "these" defendants, Oklahoma public officials overseeing certain state medical institutions. *Id.* at 1157. We reasoned that the defendants were not charged with enforcing the statute in their official capacities, and that it was the statute's coercive effect, rather than the effect of the defendants' actual or threatened conduct, that caused the abortion provider's injury-in-fact. *Id.* at 1157-58. *Cf. Winsness*, 433 F.3d at 737 (holding that plaintiff lacks standing to sue for injuries suffered from citation and ensuing criminal record because defendants "had nothing to do with it").

Under this precedent, we hold that plaintiffs' fear of prosecution under § 76-7-101 – the injury that allegedly anchors plaintiffs' challenge to Utah's

-22-

criminal prohibition of polygamy – is not "fairly traceable" to Swensen's acts.

Plaintiffs concede that Swensen has no power to initiate a criminal prosecution.

And they have not shown that Swensen has any responsibility for enforcing § 76-

7-101. *Cf.* Utah Const. art. VIII, § 16 (public prosecutors have "primary"

authority for prosecution of criminal actions); Utah Code Ann. § 10-3-928

(authorizing city attorney to prosecute certain crimes). As such, there is no nexus

between *this defendant's* past or possible future conduct and plaintiffs' fear of

criminal prosecution under Utah law.

In the face of this logic, plaintiffs argue that Swensen's power to grant a

marriage license generates the necessary causation for standing. In essence,

plaintiffs contend that if Swensen were "to issue a marriage license and a

marriage ceremony was performed," Aplt. Reply Br. at 5, they would be insulated

from criminal prosecution under § 76-7-101 and, consequently, would be free

from fear of such prosecution.

We reject this argument. Plaintiffs' theory of causation is based upon the

alleged benefits that would flow to them as a consequence of Swensen's issuance

of a marriage license – not an alleged injury that Swensen's actions have

inflicted or, in imminent fashion, will inflict upon them.[9]  Moreover, these

---

[9]     We note that in their complaint plaintiffs did not even request the
form of relief upon which they build their theory of causation – in other words,
they did not seek injunctive relief that would require Swensen to issue them a
marriage license.

benefits (insofar as they could be said to be anything more than speculative) would be the *collateral* products of Swensen's exercise of her *civil* authority. They would not flow from Swensen's enforcement of Utah's criminal prohibition of polygamy. Swensen has no authority to enforce that prohibition.

Plaintiffs' theory, therefore, fails to establish a meaningful nexus between Swensen's actions and the challenged criminal provisions, such that plaintiffs' alleged harm (*i.e.*, fear of criminal prosecution) could be deemed to be fairly traceable to her actions. Furthermore, even if Swensen issued a marriage license, this license would not eliminate the possibility (albeit remote) of prosecution: the marriage license would be deemed invalid pursuant to § 30-1-2; and plaintiffs would remain within the technical ambit of § 76-7-101.[10]

In sum, plaintiffs cannot establish causation for purposes of Article III

---

[10]     Plaintiffs allude to the possibility that Swensen's refusal to issue a marriage license has *enhanced* the likelihood of their criminal prosecution under § 76-1-101. *See* Aplt. Reply Br. at 4 ("While Ms. Swensen has no power to initiate a criminal prosecution, her actions *directly lead to* or would prevent criminal prosecutions." (emphasis added)). We summarily reject this theory. Plaintiffs have failed to cite any evidence in the record to suggest that the denial of a marriage license carries any influence on the decision to *prosecute* a defendant under § 76-7-101. *See Lujan*, 504 U.S. at 561 ("[i]n response to a summary judgment motion, . . . the plaintiff . . . must 'set forth' by affidavit or other evidence 'specific facts'" that establish each element of standing); *Gandy*, 416 F.3d at 1154 (same). Moreover, even if it did have *some* influence on the prosecutors authorized to enforce the criminal prohibition, we would not be able to conclude that this influence is "determinative or coercive." *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) (recognizing that the injury-in-fact concept "does not exclude injury produced by determinative or coercive effect upon the action of someone else").

standing.

### iii.    Redressability

Lastly, even if plaintiffs were able to survive the standing analysis as to the first two requirements, they would fail on the last and third requirement of standing – redressability.  Standing requires a likelihood that the injury-in-fact will be redressed by a favorable decision.  *See Bennett v. Spear*, 520 U.S. 154, 162 (1997).  The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.  *See Gandy*, 416 F.3d at 1158-59; *Okpalobi*, 244 F.3d at 426-27; *see also Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) (per curiam) (holding that "plaintiffs lack standing to contest the statutes authorizing private rights of action" in part "because any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors"); 13 *Federal Practice, supra*, § 3531.5, at 1076 (noting that the "connection" between causation and redressability is "very practical–if the injury is not caused by the challenged acts, an order directed to them will not redress it").

The absence of a nexus between Swensen's enforcement powers and the challenged criminal provisions renders ineffectual plaintiffs' requested prospective relief.  Enjoining *this defendant* from enforcing § 76-7-101 would be a meaningless gesture.  It would not protect plaintiffs from any threat of future criminal prosecution for polygamous behavior; such prosecutions are the province

-25-

of governmental actors other than Swensen. *See Okpalobi*, 244 F.3d at 427-28

(redressability prong of standing not met because "state official cannot be

enjoined to act in any way that is beyond his authority to act in the first place").

Nor would a declaratory judgment entered against Swensen avoid the future

possibility (albeit remote) of a criminal prosecution under § 76-7-101; state

prosecutors would not be obliged to take their cues from such a judgment. *See*

*Gandy*, 416 F.3d at 1159 (effect of federal court *judgment* on defendant, rather

than precedential value of opinion on others, must redress plaintiff's injury).

Tellingly, plaintiffs offer neither case law nor analysis to support their insistence

on the existence of redressability.

### b.    Retrospective Relief

Plaintiffs' complaint also seeks retrospective relief – nominal monetary

damages and a declaratory judgment – for Swensen's allegedly unconstitutional

conduct.[11] Again, we find that plaintiffs lack standing to pursue such relief under

a theory premised upon the unconstitutionality of Utah's *criminal* prohibition of

polygamy.

Although plaintiffs repeatedly cast their injury-in-fact in prospective-relief

---

[11]    In *Rasmussen*, we noted: "While a declaratory judgment is generally
prospective relief, in some situations, it has been recognized as retrospective. . . .
Thus, we consider declaratory relief retrospective to the extent that it is
intertwined with a claim for monetary damages that requires us to declare whether
a past constitutional violation occurred." 298 F.3d at 1202 n.2; *see Winsness*, 433
F.3d at 735.

terms, as the credible "threat" of prosecution, they also argue, without much elaboration, that "Swensen's acts in compliance with the challenged provisions caused harm to plaintiffs." Aplt. Br. at 17. This conclusory statement hardly amounts to a clear expression of why plaintiffs have standing to pursue retrospective relief. As best we can discern it, plaintiffs appear to be asserting the following theory: Swensen's denial of G. Cook's and J. Bronson's application for a marriage license, coupled with the psychological and financial consequences attendant to this denial, grants them standing to sue Swensen for monetary damages and declaratory relief based upon her unconstitutional application of the challenged *criminal* provisions.

This theory of standing cannot withstand scrutiny. We assume *arguendo* that the first requirement of Article III standing is satisfied – *viz.*, the denial of a marriage license to enter into a polygamous relationship constitutes a constitutionally cognizable injury. However, plaintiffs still cannot establish the second and third elements: their injury was not caused by Swensen's application of the challenged *criminal* provisions and the injury is not "fairly traceable" to *this defendant's* application of the challenged criminal provisions.

We start with the causation requirement. Swensen's statutory obligation to deny plaintiffs' marriage application was governed by Title 30 of the Utah Code, and, in particular, by § 30-1-2(1) and § 30-1-16, not by the challenged criminal provisions. *See* Utah Stat Ann. §§ 17-20-4, 30-1-2, 30-1-16. Nothing in Title 30

-27-

authorized Swensen to deny marriage licenses based upon conduct that *she*
believed *may* violate a particular *criminal* provision – *viz.*, nothing in Title 30
authorized Swensen to apply, even indirectly, the challenged criminal provisions
in denying marriage licenses.  Nor have plaintiffs identified a source granting a
county clerk such discretion.

And, for related reasons, plaintiffs also cannot satisfy the third standing
requirement – redressability.  Because the challenged *criminal* provisions were
not the predicate for Swensen's denial of a marriage license to plaintiffs,
affording plaintiffs a retrospective remedy centered on a legal determination that
those provisions are unconstitutional would not provide plaintiffs effective relief.
It would not redress their claimed harm.  *Cf. New York Civil Serv. Comm'n v.
Snead*, 425 U.S. 457, 458 (1976) (per curiam) (dismissing action for declaratory
and injunctive relief against New York Civil Service Commission for lack of
standing because statutory process that plaintiff challenged was never applied by
Commission to her, despite Commission's authority to administer statute);
*Faustin*, 268 F.3d at 948 (holding that plaintiff lacked standing to bring an as-
applied challenge to the constitutionality of city ordinance limiting poster
displays on public property because ordinance was not applied to plaintiff).

## III.    CONCLUSION

We hold that plaintiffs lack standing to challenge the constitutionality of
Utah's criminal prohibition of polygamy.  And, on appeal, plaintiffs have

-28-

forfeited any challenge to the constitutionality of Utah's civil prohibition of polygamy.  Accordingly, we **VACATE** the district court's judgment in favor of Swensen on the merits of plaintiffs' criminal-prohibition claims and **REMAND** the case for entry of an order dismissing these claims for lack of subject matter jurisdiction.